UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

NASSER SABER,                                          15 Civ. 5944 (LGS)

                         Plaintiff,

          -against-

NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES,

                         Defendant.

-------------------------------------------------------------X


DECLARATION OF NASSER SABER
IN SUPPORT OF PLAINTIFF'S MOTION FOR DAMAGES

I, NASSER SABER, hereby declare, pursuant to 28 U.S.C. Section 1746(2), under penalty of perjury that the following is true and correct.

      1.      I am the Plaintiff in the within action. I submit this Declaration for purposes of setting forth information as to my potential instatement into the position of Chief Risk Management Specialist ("CRMS"), as well as for purposes of providing information with respect to my wage and pay-related benefit losses so as to allow the Court to enter judgment in an appropriate amount, the jury having found discrimination based on national origin when I was not selected for the position of CRMS.


Potential Instatement to the CRMS Position

      2.      I wish to make plain that I would very much welcome instatement into the CRMS position as part of the equitable relief I seek in this case. I am ready,

1

willing and able to approach the job duties of CRMS with enthusiasm and dedication, making the priorities of DFS those I would seek to achieve in said position.

3.      I am aware that DFS has authority from the New York State Department of Civil Service for three (3) CRMS positions.  This information can be found at the New York State Department of Civil Service website at: https://www.cs.ny.gov/tsplan/tsp_result.cfm when one enters in the Agency's number 37000.  The Table found at this New York State web address lists a number of civil service titles, including that for Chief Risk Management Specialist.  (I am appending a copy of the applicable pages as Exhibit 1).  On the second page in the eighth column on the line for CRMS, it is indicated that the number of positions for which there is authority is 3.  John Cappello, Olivia Bumgardner and Anna Taam currently occupy these three positions, as the trial testimony confirmed.

Calculation of Wage and Pay-Related Benefits:

4.      I have utilized a number of documents for purposes of calculating my wage and benefit losses from my non-selection:

- Exhibit 2:  Plaintiff's Second Request for Admissions, originally marked as Plaintiff's Exhibit 1(B);

- Exhibit 3:  See Through NY payroll information for John Cappello, originally marked as Plaintiff's Exhibit 101[1];

- Exhibit 4:  See Through NY payroll information for Nasser Saber, originally marked as Plaintiff's exhibit 103;

- Exhibit 5:  2016-2019 Agreement between The Public Employees Federation, AFL-CIO and The State of New York, Appendix 1,

---

[1] See Through NY or seethroughny.net is sponsored by the non-profit Empire Center for Public Policy and provides payroll information for New York State employees.

containing Salary Schedules for non-management employees covered by the Collective Bargaining Agreement, originally marked as Plaintiff's Exhibit 107;

- Exhibit 6:  Management/Confidential Salary Schedule, effective April 7, 2016 and March 31, 2016, originally marked as Plaintiff's Exhibit 108;

- Exhibit 7:  Letter notice from The Organization of NYS Management Confidential Employees, dated Spring 2017, setting forth retroactive salary increases for management employees, originally marked as Plaintiff's Exhibit 109;

- Exhibit 8:  U.S. Department of Health and Human Services, National Vital Statistics Reports, United States Life Tables, 2013; originally marked as Plaintiff's Exhibit 104;

- Exhibit 9:  New York State and Local Retirement System Coordinated Plan excerpts, originally marked as Plaintiff's Exhibit 105.

5.    My wage loss and pay-related benefit loss is comprised of five separate categories of damages:

a) Back Pay Loss:  Loss from July 2012 through December 2017 (July 2012 is the effective date of my non-selection and the trial concluded in the latter part of December 2017;.

b)  Tax Consequences of Lump Sum Payment of Back Pay;

c) Loss of Leave Due to Attendance at Trial;

d) Front Pay Loss if the Court declines to instate me in the position of CRMS as of January 2018; and

e) Pension Loss if the Court declines to instate me in the position of CRMS.

I will address each category separately below.

Back Pay Loss:

6.      My back pay loss is the difference between the compensation I received as a Grade 29 Principal Risk Management Specialist ("PRMS-G29") and the compensation for the CRMS position awarded to John Cappello for my back pay period of July 2012 through 2017.  I have used the salary paid to Mr. Cappello as the CRMS salary since Mr. Cappello was the selectee for the position for which I was interviewed and rejected.  I submit using Mr. Cappello's salary is appropriate for this purpose.  Had I been selected, I would have received at a minimum the same salary he received.  Mr. Cappello's salary is derived from Plaintiff's Second Request for Admissions, par. 35-38, as well as the payroll information provided on See Through NY (Exhibits 3 and 4), the published Management/Confidential Salary Schedule effective in 2016 (Exhibit 6) and the 2017 notice of a retroactive increase to the salaries of Management/Confidential employees, including Mr. Cappello (Exhibit 7). My salary information is taken from and documented by Plaintiff's Second Request for Admissions, par. 63-66; See Through NY payroll information; and the 2016-2019 Collective Bargaining Agreement that contains salary schedules for non-management employees, such as myself.  (Exhibits 2, 4 and 5)

7.      The Table below sets forth the back pay loss by year, and total.  The far right column of the table is the back pay loss excluding interest.  It is my understanding that interest must be calculated by using the one-year Treasury yield rate effective as of the date of judgment, as published by the U.S. Treasury.  Since judgment has not yet been entered in my case, I cannot compute interest at this time, but I respectfully request that the Court include an award for such interest on

the back pay award based on the date of entry of judgment.  My total Back Pay loss through December 31, 2017 is $121,231.[2]

| YEAR | CAPPELLO'S SALARY (CRMS) ($) | PLAINTIFF'S SALARY (PRMS-G29) ($) | DIFFERENCE ($) |
|---|---|---|---|
| 2012 | 56,163 | 54,003 | 2,160 |
| 2013 | 125,000 | 111,064 | 13,936 |
| 2014 | 132,957 | 113,285 | 19,672 |
| 2015 | 141,041 | 113,285 | 27,756 |
| 2016 | 143,861 | 115,551 | 28,310 |
| 2017 | 149,616 | 120,219 | 29,397 |
| Total | 748,638 | 627,407 | 121,231 |

Tax Consequences of Lump Sum Payment of Back Pay

8.      A lump sum award of 6 years of back pay will result in an increase in the taxes I will have to pay on those wages as compared to the taxes I would have paid if I had been paid the higher salary on an annual basis.  As set forth in the statement from my certified public accountant, Richard Gilmartin, annexed as Exhibit 10 to this Declaration, I will pay an additional $4,152 in taxes due to the payment being made as a one-time lump sum payment – additional taxes that I would not have paid if I had received the higher salary each year from 2012 through 2017.  Thus, I respectfully request an award of $4,152 for such adverse tax consequence.

---

[2] I am respectfully requesting instatement in the position of CRMS effective January 1, 2018.

Loss of Leave Due to Attendance at Trial

9.      I also suffered a loss of leave time available to me due to the necessity for me to take time off from work to attend trial in this action.

10.     I took a total of 6 days or 45 hours (6 days x 7.5 hours per day = 45 hours) off for the trial in 2017. Multiplying it by my hourly rate of pay ($61.65)[3] yields a leave loss due to attendance at trial in an amount equal to $2,774.

Front Pay Loss:

11.     I understand that the Court may award front pay if it declines to direct instatement into the CRMS position.   For this reason, I am providing the following calculations.

12.     I have projected that the salary for the CRMS position and for my current position of PRMS-G29 will both increase at the rate of 3.4% per year, as the State level pay raises for all grade levels are equal.  This is the average percentage of year over year increase for the two positions from 2014-2018, as reflected in Exhibits 2 and 7.

13.     I am planning to retire at the end of 2023 at the age of 70, thus maximizing my social security annuity and increasing my New York State pension.

14.     As demonstrated in the Table below, my Front Pay Loss would total $198,602.

---

[3] I work 37.5 hours per week or 1,950 hours per year.  My salary for 2017 was $120,219 which results in an hourly rate of $61.65.

| YEAR | CRMS SALARY ($) | PLAINTIFF'S SALARY (PRMS-G29) ($) | DIFFERENCE ($) |
|---|---|---|---|
| 2018 | 154,703 | 124,306 | 30,396 |
| 2019 | 159,963 | 128,533 | 31,430 |
| 2020 | 165,402 | 132,903 | 32,499 |
| 2021 | 171,025 | 137,422 | 33,604 |
| 2022 | 176,840 | 142,094 | 34,746 |
| 2023 | 182,853 | 146,925 | 35,927 |
| Total | 1,010,785 | 812,183 | 198,602 |

15.     $198,602 is the total of the difference for each year from 2018 to 2023.  When each year's difference is discounted to today using the 5-year U.S. security yield of 2.61%, the total will be $185,926.[4]  Thus, if the Court awards front pay, I respectfully request it award such pay in the amount of $185,926.

Pension Loss

16.     If the Court declines to direct instatement into the Chief Risk Management Specialist position, I will also suffer a Pension Loss from the discriminatory non-selection.

17.     Yearly pension of a New York State employee is calculated according to the following formula: (average of the employee's highest 3 years of salary, which is usually their last 3 years) X (years of service) X 2%.   This formula comes from Exhibit 9 hereto - the New York State and Local Retirement System publication "Coordinated Plan".

---

[4] 2.61% is the yield as listed on the New York Stock Exchange as of February 27, 2018.

18.     For me the yearly pension loss is $16,104 as shown in the table below:

| | CRMS SALARY | PLAINTIFF'S SALARY (PRMS-G29) | DIFFERENCE |
|---|---|---|---|
| Average of final 3 years of service | $186,283 | $149,682 | $36,601 |
| Years of service | 22 | 22 | 22 |
| Benefit Percentage | 2% | 2% | 2% |
| Annual Pension | $81,965 | $65,860 | $16,104 |

19.     Total Pension Loss is the result of multiplying the annual pension loss by the number of years from retirement at the end of 2023 to the end of my life expectancy.  According to U.S. Department of Health and Human Services, National Vital Statistics Report (Exhibit 8), my life expectancy as a white male upon retirement at age 70 would be an additional 14.4 years or until age 84.4.

20.     My total pension loss is $231,897, which is the result of multiplying the annual pension loss of $16,104 by 14.4.

21.     If the Court awards pension loss and I receive this pay now, the $231,897 should be discounted to its present value.  $168,167 is the discounted value today of $16,104 each year from 2024 for 14.4 years, using the current yield of the 5-year U.S. security.  Thus, if the Court awards pension loss pay, I respectfully request it award such pay in the amount of $168,167.

Overview

23.     Based on the above calculations, if the Court directs instatement into the Chief Risk Management Specialist position, my pay losses (exclusive of interest

on back pay) will total $128,157 ($121,231 back pay +$4,152 additional taxes + $2,774 for leave loss due to attendance at trial).

24.     If the Court does not direct instatement into the CRMS position, my total losses (exclusive of interest on back pay) will be $482,250 comprised of $121,231 back pay, $4,152 additional taxes +$ 2,774 pay leave loss due to attendance at trial + $185,926 discounted front pay loss + $168,167 discounted pension loss.

25.     Based on the foregoing, I respectfully request the relief set forth herein.

_____

NASSER SABER

Dated:  New York, New York
        March 13, 2018