UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| NASSER SABER, | 15 Civ. 5944 (LGS) |
| Plaintiff, | DECLARATION OF DORIS G. TRAUB IN |
| -against- | SUPPORT OF MOTION FOR ATTORNEYS' FEES |
| NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, | |
| Defendant. | |

-----------------------------------------------------------X

DORIS G. TRAUB, under penalty of perjury, affirms and states as follows:

1.  I am a member of the firm of TRAUB & TRUAB, P.C., attorneys for Plaintiff Nasser Saber in his case against the New York State Department of Financial Services.

2.  I submit this Declaration in support of Plaintiff's Motion for Attorneys' Fees and Costs, together with the Declaration of Margaret McIntyre, pursuant to Title VII of the Civil Rights Act of 19674, 42 U.S.C. Section 2000e-5(k), for services rendered on Plaintiff's matter from November 2013 to date.

Prior Proceedings

Commencement of the Case

3.  Plaintiff consulted with me on October 31, 2013 in connection with his potential claims of discrimination and retaliation.  On November 21, 2013, Plaintiff retained me for purposes of representing him at the U.S. Equal Employment Opportunity "EEOC".  A copy of that retainer agreement is filed within collective Exhibit A.

4.  My representation of Plaintiff at the EEOC consisted of drafting and filing a Charge, two Amendments to that Charge necessitated by Defendant's escalating retaliatory

actions, and drafting and filing a Rebuttal to Defendant's response.  I also provided on-going counsel and guidance to Plaintiff with respect to his claims and the retaliation that immediately followed Defendant's receipt of notice of the EEOC complaint – including issuance of a series of negative performance appraisals and denial of Plaintiff's out-of-title grievance in January 2014, issuance of an Unsatisfactory rating in May 2014, issuance of notice that Plaintiff was the likely subject of disciplinary action in July 2014, and issuance of Charges of Misconduct and Incompetence with a proposed 20-day suspension in October 2014.  Defendant's retaliation necessitated considerable strategizing to save Plaintiff's job.

5. After receiving a Right to Sue letter from the EEOC, Plaintiff retained my firm on March 11, 2015 for purposes of continued representation in anticipation of filing in Court.  A copy of that retainer is contained within collective Exhibit A.

6. After my retention for continued representation, an arbitration hearing was scheduled with respect to the Charges of Misconduct and Incompetence and the proposed 20-day suspension that Defendant had brought after notice of Plaintiff's EEOC filing.  This necessitated representation at an arbitration hearing challenging the Charges in April and May 2015.  My representation at the arbitration hearing was critical:  it was important that no arbitration decision be issued that might harm Plaintiff's court case; and it enabled me to obtain sworn testimony from a number of the individuals who it was anticipated and who did eventually testify at trial, without the necessity of later deposing them.  This included John Cappello, Helen Hodge and, at least initially, Anna Taam.

7. I drafted and filed a Complaint with the Court on July 29, 2015, followed by an Amended Complaint on October 22, 2015.

8. Pursuant to the Court rules and Orders with respect to employment cases, the parties engaged in the provision of early discovery through the Court's Pilot Program and participated in mediation.

9. The parties thereafter engaged in formal discovery. Among other things, more specifically set forth in my contemporary time records which are annexed as Exhibit B, I drafted Interrogatories; two sets of Document Requests, two sets of Requests for Admissions and responded to Defendant's Interrogatory and Document Requests. I prepared for and took the depositions of six individuals, negotiated a written Affirmation in Lieu of Deposition in connection with one additional individual, and defended the deposition taken of Plaintiff. Further, I attempted to locate and serve a non-party witness with a Subpoena for Deposition.

10. I also engaged in many communications with opposing counsel with the goal of obtaining all responsive discovery material without the necessity of motion practice. Letter and email communication were necessary due to Defendant's slow provision of documents responsive to Plaintiff's requests.

Defendant's Motion for Summary Judgment

11. On August 18, 2016, Defendant filed a motion for summary judgment, seeking dismissal of all of Plaintiff's claims. For purposes of responding to Defendant's motion for summary judgment, I reviewed all of the depositions and discovery documents, drafted a responsive Rule 56(a) Statement, drafted Declarations for Plaintiff, witness Manzar Sahebjam-Atabaki and myself, and researched and drafted Plaintiff's Memorandum of Law in Opposition. On March 10, 2017, the Court rendered its decision on Defendant's Motion

for Summary Judgment. After the Court's decision on summary judgment, the parties appeared before the Honorable Ronald L. Ellis on May 4, 2017 for a settlement conference.

Pre-Trial Submissions

12. Following the decision on summary judgment, the parties were directed to file motions *in limine* and pre-trial submissions. On June 6, 2017, in anticipation of trial, Plaintiff signed a third retainer agreement (filed herewith within collective Exhibit A), agreeing to bring on Margaret McIntyre, Esq. as co-counsel in the case. Ms. McIntyre and I then researched, drafted and filed Plaintiff's motions *in limine* and began drafting and redrafting pretrial submissions in intensive consultation with opposing counsel. We researched, drafted and filed Plaintiff's opposition to Defendant's motions *in limine*[1].

Additional Discovery and Second Settlement Conference

13. While working on the Joint Pretrial Order, I discovered that Defendant had failed to turn over two sets of documents, totaling over 2,000 pages of responsive documents in discovery. This necessitated a request to reopen discovery, which the Court granted, and the preparation for and taking of 3 additional depositions.

14. On August 21, 2017, the parties prepared for and participated in a second settlement conference before the Honorable Ronald L. Ellis.

Trial Preparation and Trial

15. I worked, in conjunction with co-counsel Margaret McIntyre, on all of Plaintiff's pre-trial submissions including drafting and redrafting of the Joint Pretrial Order, a Joint Proposed Verdict Form, Joint Proposed Voir Dire and Joint Proposed Jury Instructions. This work required re-reading deposition transcripts, close review of all

---

[1] Ms. McIntyre and I have taken extreme care not to duplicate one another's efforts. Through frequent and ongoing telephonic and office conferences, we delegated the work and review of that work in such a way so as to ensure our time was well-managed between the two of us.

4

documents for possible use as exhibits, research and drafting, and ongoing consultation with opposing counsel and with my client.  The pretrial submissions were filed on October 24, 2017.

16.     In preparation for trial, I reviewed all deposition transcripts, all documents produced in this case, prepared direct and cross-examination questions, drafted an Opening and Closing, prepared Plaintiff's non-hostile witnesses and prepared Plaintiff for his testimony at trial.  Ms. McIntyre and I prepared for and attended the Final Pretrial Conference and continued to work on Stipulations, agreements as to redactions of the Requests for Admissions and the tape recording to be introduced at trial and other matters relevant to the trial.

17.     The case was tried from December 11th to December 19th, 2017, when the jury returned a verdict in Plaintiff's favor.  Plaintiff achieved substantial relief at trial.  The jury found in favor of Plaintiff on his discrimination claim based on national origin and on his retaliation claims and awarded $2.5 million dollars in compensatory damages.

Post-Trial Motions

18.     Defendant filed motions under Rule 50 and Rule 59 of the FRCP on January 16, 2018.  On February 13, 2018, Plaintiff filed his Opposition.  Opposing Defendant's motion required detailed review of all trial testimony and exhibits, legal research and drafting of Plaintiff's responsive Memorandum of Law and Declaration.

Qualifications

19.     I was lead counsel and, indeed, sole counsel on this case until June 6, 2017, when Ms. McIntyre came in to serve as co-counsel for purposes of jointly formulating trial strategy,

preparing trial submissions and providing representation at trial. Ms. McIntrye's qualifications are addressed in a companion Declaration, while my qualifications are set forth below.

20. I am a partner in the firm of TRAUB & TRAUB, P.C., with an office located at 39 Broadway, New York, New York. I am admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York; the Court of Federal Claims; the United States Court of Appeals for the Second Circuit and the Federal Circuit; and the New York State courts. I also practice regularly before the EEOC, the EEOC's Office of Federal Operations, the United States Merit System Protection Board and other federal administrative forums that provide hearings and trials to federal sector employees.

21. I graduated from New York University School of Law in 1980 and I have engaged in the practice of law since that time, spanning a period of approximately thirty-seven years. I began practice in the litigation department of the law firm of Cole & Deitz in 1980.[2] In 1984, I formed the partnership of Traub & Traub with Jeffrey Traub, Esq. and, in 1989, we formed a Professional Corporation.

22. For more than 37 years, my practice has focused predominantly on the representation of employees, with a particular emphasis on the representation of public employees, including public agency and court employees, in connection with their rights under the law. This has included representing employees on claims of discrimination, retaliation, wrongful removal from employment, retirement rights, and much more. *See, e.g., Joseph v. M.S.P.B.,* No. 2007-3073 (Fed. Cir. 2007)(veterans' rights); *Santos v. City of New York, Department for the Aging,* 08-CV-01840 (AKH)(SDNY)(sexual harassment); *Haus v. Potter, U.S.P.S.,* 07 Civ. 4808 (CM)(JCF)(SDNY)(wage discrimination based on gender); *Taffet v.*

---

[2] Cole & Deitz subsequently merged with the firm of Winston & Strawn.

*Social Security Administration,* 99 CIV. 1771 (JPG)(SDNY)(age discrimination); *Blue v. Department of Health & Human Services ,*98 Civ. 9802 (SHS)(SDNY))(race discrimination); *Canary v. U.S. Postal Service,* 2013 MSPR 25 (2013) (wrongful termination); *Lozada v. Department of Homeland Security,* EEOC No. 520-2013-00059X(disability discrimination); *Soffer v. S.B.A.,* EEOC 520-2012-00192X(retaliation); *Kitchen v. N.L.R.B.,* EEOC No. 520-2009-00247X(race discrimination); Waskiewicz v. General Services Administration, EEOC Office of Federal Operations, Appeal No. 01A00965 (sexual harassment).

23. I am currently representing with co-counsel over 3,800 employees of the United States Census Bureau in a class action lawsuit for Sunday premium pay in the Court of Federal Claims, where we have been successful in obtaining summary judgment on liability and where we are currently awaiting entry of individual judgments on behalf of the class members we represent. *Gross v. United States,* 128 Fed. Cl. 745 (Ct. of Fed. Claims 2016).

24. In addition to my employment-related practice, I have also successfully represented plaintiffs on claims of wrongful arrest and unjust conviction, as well as employee-defendants in criminal matters. *See, e.g.*, *Mason v. State of New York* (wrongful conviction); *Kamara v. City of New York*, 299 A.D.2d 316 (2d Dep't 2002)(false arrest); and *People v. Bac Tran*, 80 N.Y.2d 170 (1992)(seminal case on interpretation of New York State bribery statute). I have argued appeals before the Second Circuit Court of Appeals, the Court of Appeals for the Federal Circuit, the Court of Appeals of the State of New York, and the First, Second and Third Department New York Supreme Court Appellate Divisions.

25. I am a member of the New York County Lawyer's Association, the New York City Bar Association, the Court of Federal Claims Bar Association, the National Employment Lawyers' Association ("NELA") and the local NELA affiliate, NELA/NY. I have served on the

Executive Board of NELA/NY, an organization devoted to the practice of employee representation. I have lectured in the context of continuing legal education courses for attorneys on representation of employees in the federal sector and on the subject of mediation for NELA/NY and for the Association of the Bar of the City of New York.

The Requested Hourly Rate of $450 Per Hour is Reasonable

26.     My original retainer agreement with Plaintiff, which was executed in 2013 – more than four years ago - reflects an hourly rate of $450 per hour, as does my subsequent retainer agreements with Plaintiff, where the original hourly rate was maintained in light of my policy not to increase the billable rate for clients once I am retained on a matter.[3]  Thus, throughout this case I have charged Plaintiff $450 per hour for the work I performed and, pursuant to our retainer agreements found within collective Exhibit A hereto, Plaintiff has paid me on an ongoing basis $450 per hour for the work performed – evidence of the reasonableness of the rate.

27.     Additionally, as set forth in the accompanying Memorandum of Law, the rate of $450 per hour falls below what is charged by attorneys of similar skill and experience in the Southern District of New York and the rates awarded by the Courts in the District that range from $500 to $700 per hour.

28.     Finally, I am providing detailed Declarations from a number of attorneys in the community familiar with my work and the prevailing community rates for attorneys of comparable expertise and experience as mine.  These Declarations evidence that the rates in the community for attorneys of my experience and skill are significantly higher than the rate requested herein.

---

[3] My current billable rate for new clients is $500 per hour, a rate that still reflects my recognition that public sector employees are very much in need of affordable representation and my desire to be of service to them.

Time Expended

29. Services I provided are fully reflected in my contemporaneous time records, which are filed as Exhibit B hereto. My contemporaneous Time and Expense slips set forth with specificity the date, the time expended to the nearest $1/10^{th}$ of an hour, and a description of the work performed. Please note the following abbreviations that appear in the descriptions: "P" - Plaintiff; "D" - Defendant; "OC" - Office Conference; "TC" - Telephonic Conference; "Opp C" - Opposing Counsel; "Co C" - Co-Counsel; and "MOL" - Memorandum of Law.

30. I am diligent in assessing the productivity of my time and, if my work appears to become redundant or ineffective, in the exercise of billing judgment, I reduce the amount I record to what is reasonable and, in some instances, simply record "NC" or "No Charge" and do not bill for that work. Thus, I have made an ongoing good faith effort to exclude any hours that are excessive, redundant or unnecessary. I certify that these hours, which total 1,080.8 through the end of February 2018 are accurate, reasonable and necessarily incurred in the prosecution of this action.

Calculation of Fees

31. Based upon the information set forth above, Plaintiff requests an award of $450 per hour for the 1,080.8 hours expended by me for a total of $486,360. Plaintiff also requests an award of $400 per hour for the 285.5 hours expended by Ms. McIntyre as set forth in her Declaration for a total of $114,200 for her work and a total for our work together in the amount of $600,560.[4]

---

[4] Plaintiff will file a supplemental request in his Reply for the additional hours expended.

9

Costs

32. It is also my practice to record billable expenses on my contemporaneous Time and Expense slips on the date on which payment is made. I certify that Plaintiff's costs with the exclusion of those Plaintiff paid directly are correctly reflected on said Time and Expense Slips and reflect some of the reasonable costs that were necessarily incurred in the litigation and that were charged to and paid by Plaintiff. The costs that Plaintiff paid directly are correctly reflected below, as well, and they, too, include reasonable costs necessarily incurred in this litigation. The costs for which an award is sought are as follows:

Total Paid by Traub & Traub and Reimbursed by Plaintiff: $3,724.99

>Court Filing Fee: $400
>Subpoena and process service fees: $360
>Skip tracing for non-party witness: $150
>Copy/Preparation of all Trial Exhibit Binders
>by Hard Copy, Inc. $2,727.78
>Southern District Reporters transcription of Openings: $87.21

Total Paid Directly by Plaintiff: $9,367.20

>Bee Reporting Agency, Inc.: $3,173.70
>    - transcription of arbitration hearing
>Ellen Grauer Court Reporting Co., LLC: $5,069.50
>    - transcription of depositions
>Ellen Grauer Court Reporting Co., LLC: $438.00
>    - transcription of audio recording
>Veritext New York Reporting Co.: $686.00
>    - copy of Plaintiff's deposition

TOTAL COSTS: $13,092.19

Accordingly, Plaintiff respectfully requests a total award of costs of $13,092.19.

Dated: New York, New York
March 14, 2018

/s/   *Doris G. Traub*
Doris G. Traub