UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

NASSER SABER,                                    :
                                                 :
                          Plaintiff,             :
                                                 :           15-cv-5944 (LGS) (SDA)
                                                 :
             -against-                           :
                                                 :
                                                 :
NEW YORK STATE DEPARTMENT OF                     :
FINANCIAL SERVICES,                              :
                                                 :
                          Defendant.             :
                                                 :
                                                 :
----------------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR AN ENTRY OF JUDGMENT FOR DAMAGES, EQUITABLE RELIEF
AND REASONABLE ATTORNEYS' FEES AND COSTS**


ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant New York State Department
of Financial Services*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6035


ANDREW AMER
Special Litigation Counsel
ALISSA S. WRIGHT
Assistant Attorney General
      *of Counsel*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   PLAINTIFF IS NOT ENTITLED TO THE WINDFALL THAT WOULD
     RESULT FROM THE INFLATED BACK PAY AMOUNT HE SEEKS ...................... 3

     A.  Plaintiff Miscalculates His Back Pay ................................................................. 3

     B.  The Court Should Reject Plaintiff's Unsubstantiated Request for
         Compensation Based on Purported Adverse Tax Consequences ......................... 6

     C.  Plaintiff Is Not Entitled to Compensation for "Loss of Leave" ........................... 7

II.  PLAINTIFF'S REQUEST FOR INSTATEMENT OR, ALTERNATIVELY, AN
     AWARD OF GROSSLY OVERSTATED FRONT PAY SHOULD BE
     REJECTED ........................................................................................................................ 8

     A.  The Court Should Decline To Order DFS To Promote Plaintiff To An
         M5 CRMS Position Because It Would Require "Bumping" An Innocent
         Incumbent, Extraordinary Relief That Is Clearly Not Warranted Here ................ 8

     B.  Plaintiff Is Not Entitled To Front Pay Because DFS Can Make Plaintiff
         "Whole" By Paying Him An M5 Grade Salary Through An Open Exempt
         Line Position ....................................................................................................... 10

     C.  Plaintiffs' Calculation Of Front Pay Is Based On Undue Speculation And
         Would Result In An Impermissible Windfall ....................................................... 12

III. THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR
     INJUNCTIVE RELIEF .................................................................................................... 16

IV.  PLAINTIFF'S REQUESTED FEES ARE UNREASONABLE AND SHOULD
     BE SUBSTANTIALLY REDUCED ............................................................................... 18

     A.  Plaintiff's Attorneys' Bills Are Excessive ......................................................... 18

     B.  Plaintiff is Not Entitled to Fees for the Disciplinary Arbitration Hearing ........... 21

C. The Number of Hours Should be Reduced Because the Billing Records Contain Improper Block Billing and Vague Entries ............................................ 22

D. Plaintiff's Counsel's Billing Records Demonstrate Duplicative Work ............... 23

E. Plaintiff's Attorneys Are Not Entitled to Fees for Non-Legal Clerical Work ...... 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Aguilar v. E-Z Supply Corp.*,
   No. 06 Civ. 6790, 2009 WL 2905545 (E.D.N.Y. Sept. 10, 2009)..........................................22

*Auto. Club of N.Y., Inc. v. Dykstra*,
   No. 04 Civ. 2576, 2010 WL 3529235 (S.D.N.Y. Aug. 24, 2010) ..........................................18

*Banks v. Travelers Cos.*,
   180 F.3d 358 (2d Cir. 1999)...........................................................................................8, 11

*Barbano v. Madison County*,
   922 F.2d 139 (2d Cir.1990)................................................................................. 11-12, 15

*Bentley Labs. LLC v. TPR Holdings LLC*,
   No. 14 Civ. 6306, 2017 WL 4326536 (S.D.N.Y. Sept. 28, 2017) ..........................................23

*Bravia Capital v. Fink*,
   296 F.R.D. 136 (S.D.N.Y. 2013) ..........................................................................................22

*Chauca v. Park Mgmt. Sys., LLC*,
   10 Civ. 5304, 2016 WL 8117953 (E.D.N.Y. July 18, 2016) ............................................19, 20

*Creighton v. Dominican College*,
   No. 09 Civ. 3987, 2011 WL 4914724 (S.D.N.Y. Aug. 16, 2011) ..........................................20

*Daiwa Special Asset Corp. v. Desnick*,
   No. 00 Civ. 3856, 2002 WL 31767817 (S.D.N.Y. Dec. 3, 2002)...........................................24

*Dunlap-McCuller v. Riese Org.*,
   980 F.2d 153 (2d Cir. 1992)..................................................................................................16

*Germain v. Suffolk County*,
   672 F. Supp. 2d 319 (E.D.N.Y. 2009) .................................................................................21

*Gierlinger v. Gleason*,
   No. 89 Civ. 0686E(F), 1999 WL 222604 (W.D.N.Y. Apr. 2, 1999) ......................................20

*Greenbaum v. Svenska Handelsbanken, N.Y.*,
   998 F. Supp. 301 (S.D.N.Y. 1998) ......................................................................................19

*Guallpa v. N.Y. Pro Signs Inc.*,
   No. 11 Civ. 3133, 2014 WL 2200393 (S.D.N.Y. May 27, 2014), *adopted by*
   2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).......................................................................19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................................................19

*Iannone v. Frederic R. Harris, Inc.*,
    941 F. Supp. 403 (S.D.N.Y. 1996) .............................................................................3, 7

*Kauffman v. Maxim Healthcare Servs., Inc.*,
    No. 04 Civ. 2869, 2008 WL 4223616 (E.D.N.Y. Sept. 9, 2008).............................19

*Kim v. Dial Serv. Int'l, Inc.*,
    No. 96 Civ. 3327, 1997 WL 458783 (S.D.N.Y. Aug. 11, 1997), aff'd, 159
    F.3d 1347 (2d Cir. 1998)...........................................................................................19

*Kirkland v. Buffalo Bd. of Ed.*,
    487 F. Supp. 760 (W.D.N.Y. 1979), aff'd, 622 F.2d 1066 (2d Cir. 1980) ............17

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998)...................................................................................4, 5

*Lander v. Hodel*,
    1988 WL 122580 (D.C. Cir. Nov. 7, 1988), aff'd sub nom., *Lander v. Lujan*,
    888 F.2d 153 (D.C. Cir. 1989) ...................................................................................9

*Lander v. Lujan*,
    888 F.2d 153 (D.C. Cir. 1989) ...................................................................................9

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
    No. 12 Civ. 7311, 2016 WL 5812105 (S.D.N.Y. Sept. 22, 2016)...........................24

*Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v.*
*Port Auth. of N.Y. & N.J.*,
    944 F. Supp. 208 (S.D.N.Y. 1996) ...........................................................................16

*Matthews v. Mem'l Sloan-Kettering Cancer Ctr.*,
    No. 83 Civ. 6065, 1985 WL 151 (S.D.N.Y. Mar. 19, 1985) ...................................16

*New York Ass'n for Retarded Children ("NYSARC") v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)....................................................................................18

*New York Gaslight Club, Inc. v. Carey*,
    447 U.S. 54 (1980).....................................................................................................21

*Norwood v. Salvatore*,
    No. 3:12 Civ. 1025, 2016 WL 1060299 (N.D.N.Y. Mar. 15, 2016).......................20

*Pollard v. E.I du Pont de Nemours & Co.*,
    532 U.S. 843 (2001)......................................................................................... 10-12, 15

*Portillo v. New Ko-Sushi Japanese Rest., Inc.*,
    No. 16 Civ. 2429, 2017 WL 3995602 (S.D.N.Y. Sept. 8, 2017).............................24

*Rao v. New York City Health and Hospitals Corp.*,
  882 F. Supp. 321 (S.D.N.Y. 1995) ................................................................ 11-12, 16

*Reiter v. Metro. Transp. Auth. of N.Y.*,
  No. 01 Civ. 2762, 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003) ........................................7

*Rivera v. Baccarat, Inc.*,
  34 F. Supp. 2d 870 (S.D.N.Y. 1999) ................................................................11, 13

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ........................................................................................16

*Robinson v. Metro–North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2000) ...............................................................................10

*Rosario–Torres v. Hernandez–Colón*,
  889 F.2d 314 (1st Cir. 1989) ...............................................................................8

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
  241 F.3d 232 (2d Cir. 2001) ...............................................................................16

*S.E.C. v. Tourre*,
  4 F. Supp. 3d 579 (S.D.N.Y. 2014) .........................................................................16

*Sharkey v. Lasmo (Aul Ltd.)*,
  15 F. Supp. 2d 401 (S.D.N.Y. 1998) ....................................................................11, 13

*Shea v. Icelandair*,
  925 F. Supp. 1014 (S.D.N.Y. 1996) .........................................................................10

*Thomas v. iStar Fin., Inc.*,
  508 F. Supp. 2d 252 (S.D.N.Y. 2007) ........................................................................6

*Tsombanidis v. W. Haven Fire Dep't*,
  352 F.3d 565 (2d Cir. 2003) ...............................................................................21

*Tucker v. City of N.Y.*,
  704 F. Supp. 2d 347 (S.D.N.Y. 2010) ........................................................................24

*United States v. Burke*,
  504 U.S. 229 (1992) ........................................................................................11

*Vernon v. Port Auth. of N.Y. & N.J.*,
  220 F. Supp. 2d 223 (S.D.N.Y. 2002) ........................................................................4

*Versarge v. Township of Clinton N.J.*,
  984 F.2d 1359 (3d Cir. 1993) ...............................................................................8

v

*Walters v. City of Atlanta*,
    803 F.2d 1135 (11th Cir. 1986) ................................................................................9

*Whittlesey v. Union Carbide Corp.*,
    742 F.2d 724 (2d Cir. 1984)......................................................................................8

*Williams v. Roberts*,
    904 F.2d 634 (11th Cir.1990) ...................................................................................8

*Wise v. Kelly*,
    620 F. Supp. 2d 435 (S.D.N.Y. 2008)......................................................................22

*Zhao Hui Chen v. Jin Holding Grp. Inc.*,
    No. 10 Civ. 0414, 2012 WL 279719 (S.D.N.Y. Jan. 31, 2012).............................20

**FEDERAL STATUTES**

28 U.S.C. § 1961 ............................................................................................................6

**STATE STATUTES**

New York Civil Service Law § 131.2(a) .......................................................................5

**MISCELLANEOUS AUTHORITIES**

Agreement between the Executive Branch of the State of New York and the
    Public Employees Federation, AFL-CIO ("PEF"), 2011-2015,
    http://www.pef.org/archive/contract_resources/2011_complete_contract/2011-
    2015_complete.pdf..................................................................................................22

## PRELIMINARY STATEMENT

Defendant, the New York State Department of Financial Services ("DFS") submits this memorandum of law, together with the Affidavit of Chad Loshbaugh, Director of Administration and Operations at DFS ("Loshbaugh Aff."), and the Declaration of Alissa Wright ("Wright Dec."), with exhibits, in opposition to Plaintiff's motion for damages, including back pay, front pay, injunctive relief, and attorneys' fees.  As DFS previously demonstrated, the verdict in this case was based on juror confusion and should be set aside as a matter of law.  *See* ECF Nos. 161, 167.[1]  However, even if this Court enters judgment in favor of Plaintiff based on the verdict, as established herein, Plaintiff is not entitled to the inflated damages or fees or the unnecessary injunctive relief that he seeks.

First, Plaintiff is not entitled to the windfall that would result from his requested back pay award.  (*See* Point I, *infra*.)  Plaintiff miscalculates his back pay based on: (i) an erroneous assumption that had he received the M5 Chief Risk Management Specialist ("CRMS") position, his starting salary as a state employee moving from one grade level to another would have been the same the starting salary approved for the external candidate who was actually hired; and (ii) purported tax consequences and loss of vacation time for which he offers no legal or factual support.  In seeking back pay, Plaintiff improperly requests an amount that would compensate him ***more*** than the amount that would make him whole.  Thus, to the extent the Court finds that Plaintiff is entitled to back pay, his award must be reduced.

Second, Plaintiff's request for instatement to the M5 CRMS position, or in the alternative, for front pay and purported lost pension benefits, is unsubstantiated, unreasonable, and unnecessary.  (*See* Point II, *infra*.)  In seeking instatement to the M5 CRMS position,

---

[1] DFS's motion pursuant to Fed. R. Civ. P. 50 and 59 for judgment as a matter of law, or in the alternative, for a new trial and/or remitter, is currently pending before the Court.

Plaintiff advocates that the Court "bump" John Cappello or Olivia Bumgardner, the individuals currently in M5 positions.  The Court should reject Plaintiff's request as grossly unfair, inequitable, and without precedent.  Nor should the Court entertain Plaintiff's request for front pay or purportedly lost pension benefits because, going forward, DFS can pay Plaintiff the salary he would have earned in the M5 CRMS position through an available "exempt line" position.  This will avoid awarding Plaintiff an inappropriate windfall based on his rank speculation concerning his future salary, retirement plans, and life expectancy.

Third, Plaintiff improperly seeks an injunction requiring DFS to essentially "obey the law" as well as the expungement of certain records from his personal history file.  (*See* Point III, *infra*.)  The Court should reject Plaintiff's requests because such an injunction is unnecessary and inappropriate, and because Plaintiff's own actions prevented the jury from making independent decisions concerning each of the records Plaintiff now seeks to expunge.

Finally, Plaintiff's requested attorneys' fees are unreasonable and should be substantially reduced.  (*See* Point IV, *infra*.)  Plaintiff's counsel billed an excessive number of hours considering this was a straightforward discrimination and retaliation case, and especially given counsel's experience litigating similar claims.  Further, Plaintiff's counsel's block-billing, vague entries, inconsistent records, and tendency to bill at higher rates for clerical work that could have been done by a paralegal or administrative assistant mandate a substantial reduction.

Accordingly, Plaintiff's requests for damages, attorneys' fees and equitable and injunctive relief are well in excess of what is reasonable and permissible under the law, and should be substantially reduced or denied in their entirety.

## ARGUMENT

## I.    PLAINTIFF IS NOT ENTITLED TO THE WINDFALL THAT WOULD RESULT FROM THE INFLATED BACK PAY AMOUNT HE SEEKS

The purpose of a back pay award is to make the plaintiff whole; it is not to punish the employer or provide a windfall to the employee. *Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 411–12 (S.D.N.Y. 1996) ("Title VII plaintiffs should not be made more than whole."). Here, Plaintiff's request for back pay would make him "more than whole," and therefore should be reduced.

### A.  Plaintiff Miscalculates His Back Pay

Plaintiff's calculation of back pay is incorrect. First, back pay could not reasonably be deemed to accrue until August 2012, at the earliest. Plaintiff applied for the M5 CRMS position in March 2012 (Joint Exh. 2), and he was interviewed along with other internal candidates in June 2012 (Joint Exh. 4). In July 2012, the position was offered to Fred Weingartner. *See* Trial Tr. 246:15-247:4. When Weingartner did not accept the position, DFS offered the position to another internal candidate, Victor Drapala, who turned down the position on July 27, 2012.[2] *See id.*; *see also* Loshbaugh Aff. at ¶ 5. Thus, even assuming Plaintiff was offered the M5 CRMS position immediately thereafter, logically, the earliest he would have started working in that position, and earning a commensurate M5 level salary, was August 2012. Accordingly, any back pay award should begin no earlier than August 2012, and end on the date of judgment.

Second, Plaintiff improperly uses John Cappello's salary as a proxy for what his own salary would have been had he been selected for the M5 CRMS position. For the purposes of calculating Plaintiff's back pay award, Cappello's salary is irrelevant; the only relevant figures

---

[2] Notably, Plaintiff has never claimed that the decision to offer the position to either Weingartner or Drapala was motivated by discrimination, nor has he argued that he was more qualified than either of those candidates.

are the salary Plaintiff earned in his position as a Grade 29 employee as of August 2012 and the salary that Plaintiff would have earned had he been selected for the M5 CRMS position.[3]  *See Vernon v. Port Auth. of N.Y. & N.J.*, 220 F. Supp. 2d 223, 235 (S.D.N.Y. 2002) (calculating back pay "as the difference between [plaintiff's] current salary and the salary he would have earned had he been promoted").  Plaintiff assumes that he would have made the same salary as Cappello based on nothing more than his self-serving statement that:  "I submit using Mr. Cappello's salary is appropriate for this purpose.  Had I been selected, I would have received at a minimum the same salary he received."  Saber Aff. at ¶ 6.  Plaintiff's assumption is without legal or factual support.

The Second Circuit has made clear that a back pay award "should be based on what the employee himself would have earned."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998).  "Evidence of the salaries paid to other individuals may be relevant to that calculation, but only insofar as the plaintiff lays a sufficient foundation to permit the reasonable inference that his salary would have matched or been pegged to the salaries of others."  *Id.*  Here, Plaintiff's unsupported statement that his salary would have at least matched Cappello's salary, merely because he says so, is insufficient.  As established by the affidavit of DFS's Director of Administration and Operations, Chad Loshbaugh, the M5 CRMS position at the relevant time had a salary range from $101,149 to $127,794, with an approved hiring rate for internal candidates of $101,149.  Loshbaugh Aff. at ¶ 7.  Cappello, as a person with no prior state service, was eligible to receive a starting salary anywhere in the M5 salary range as determined by a

---

[3] Plaintiff's calculations concerning Cappello's salary are premised on a fiction.  Although Plaintiff begins his back pay calculation in the year 2012, and lists Cappello's salary for that year (Saber Aff. at ¶ 7), Cappello was not hired until May 2013.  Trial Tr. 411:3-4.  Thus, Plaintiff's calculations merely speculate what Cappello's salary would have been had Cappello been hired in 2012.  If the Court were to accept Plaintiff's calculation of the differential between his salary and Cappello's salary as the relevant "lost wages" figure for back pay (which it should not), then the commencement date for back pay should be May 20, 2013 (Cappello's first day in that position).  *Id*.

number of factors, including his experience in the private sector.  *Id.*   For this reason, Cappello's approved starting salary when appointed in May 2013 was $125,000.  *Id.* In contrast, an individual such as Plaintiff, who was in state service and would have been promoted from one grade to another, would be eligible under applicable law to receive only the higher of: (i) the base approved hiring rate (i.e., $101,140); or (ii) the statutory promotion increase pursuant to New York Civil Service Law § 131.2(a), which for Plaintiff would be a 7.5% increase above his then-current salary of $108,007, or $116,108.  *Id.* at ¶¶ 10-11.  Because Plaintiff's statutory promotion increase would provide him with a higher salary than the approved hiring rate, his starting salary if he had been promoted to the M5 CRMS position in August 2012 would have been no more than $116,108, as mandated by state law.  *Id.*  Thus, the Court should reject Plaintiff's unsupported assumption that he would have earned the same salary as Cappello, an external candidate with decades of management experience in the private sector.

To calculate back pay, the relevant differential is what Plaintiff did earn,[4] and what he would have earned based on a starting salary of $116,108.  *Kirsch*, 148 F.3d at 166.  Accordingly, Plaintiff's back pay, exclusive of interest, should be as follows:[5]

---

[4] Plaintiff seems to extract his salary from a variety of sources, including a non-profit website, in a self-serving way, using whichever figures yield the most favorable calculations.  *See* Saber Aff. at ¶ 4.  The Court should calculate back pay using Plaintiff's salary from the Comptroller's Office payroll records as reflected in the Loshbaugh Affidavit, Exhibit B.

[5] Loshbaugh Aff., Ex. B.

| TIME PERIOD | PLAINTIFF'S ACTUAL SALARY | M5 CRMS SALARY | DIFFERENCE |
|---|---|---|---|
| 8/1/2012-3/27/2013 | $70,840.51 | $76,153.82 | $5,313.31 |
| 3/28/2013-3/27/2014 | $110,759.22 | $120,218.28 | $9,459.06 |
| 3/27/2014-3/25/2015 | $112,974.16 | $127,140.26 | $14,166.10 |
| 3/26/2015-4/6/2016 | $119,338.38 | $139,349.18 | $20,010.80 |
| 4/7/2016-4/5/2017 | $117,538.46 | $140,707.84 | $23,169.38 |
| 4/6/2017-4/4/2018 | $119,889.12 | $146,392.22 | $26,503.10 |
| 4/5/2018-4/11/2018 | $3,601.66 | $2,901.40 | -$700.26 |
| **TOTAL** | $654,941.51 | $752,863.00 | $97,921.49 |

Therefore, Plaintiff is entitled to back pay of no more than $97,921.49, together with prejudgment interest at the average annual Treasury bill rate from August 2012 to the present, compounded annually. *See Thomas v. iStar Fin., Inc.,* 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007); *see also* 28 U.S.C. § 1961.

**B. The Court Should Reject Plaintiff's Unsubstantiated Request for Compensation Based on Purported Adverse Tax Consequences**

Plaintiff argues that the lump sum award of back pay "will result in an increase in the taxes I will have to pay on those wages *as compared to the taxes I would have paid if I had been paid the higher salary on an annual basis*." Saber Aff. at ¶ 8 (emphasis added). But his accountant does not calculate this purported "increase" in taxes at all; rather, his accountant calculates simply the increase in Plaintiff's taxes resulting from the addition of the back pay to his 2018 income, which he claims pushes Plaintiff into a higher tax bracket. Saber Aff., Exh. 10 at ¶¶ 4-5. Notably, the accountant does not provide any information concerning Plaintiff's total taxable income in each of the years 2012 through 2017 (including any income his wife earned), what additional amount of tax Plaintiff would have owed in each of those years had he been paid the higher M5 salary, or what investment income Plaintiff has earned on the amounts he otherwise would have had to pay in taxes from 2012 through 2017. Without any information about Plaintiff's total taxable income in each of the years 2012 through 2017 or copies of his tax

returns for these years, there is no way to know what tax bracket would have applied to his higher M5 salary or the tax implications for his returns year over year had he been paid the higher salary on an annual basis.[6]  Indeed, given the change in the tax law in 2018, it is entirely possible that Plaintiff will pay the same or less in taxes on the lump sum back pay award (taking into account his investment income) than he would have paid if he had received the higher salary each year since 2012.  Thus, Plaintiff has failed to meet his burden of demonstrating that he should receive an additional award of $4,152 to make him "whole" for the possible tax implications of his requested back pay award.[7]  *Iannone*, 941 F. Supp. at 411–12.

### C.  Plaintiff Is Not Entitled to Compensation for "Loss of Leave"

Plaintiff improperly seeks $2,774 for "loss of leave due to attendance at trial."  Saber Aff. at ¶¶ 9-10.  Plaintiff is not entitled to such compensation.

As an initial matter, there is no legal basis for such reimbursement, and indeed, Plaintiff does not cite any case law in support of his request.  In fact, the one case found in this district adjudicating a similar issue found that the plaintiff was "not entitled to recoup seven days vacation time he spent at trial as 'costs' of litigation."  *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2003 WL 22271223, at *16 (S.D.N.Y. Sept. 30, 2003).  This holding is consistent with the general proposition that a plaintiff is not entitled to a windfall in recuperating back pay. *Iannone*, 941 F. Supp. at 411–12.  Here, as a benefit of his employment, Plaintiff receives vacation time and personal leave time to use as he sees fit.  Plaintiff's choice to bring this lawsuit and use his vacation time to attend trial does not entitle him to a payout that is not afforded to

---

[6] There is no basis to assume that Plaintiff's total taxable income would be only his Grade 29 salary.  Considering all of his published books, including one that was a "bestseller," it is reasonable to assume that he had other sources of taxable income.  (Tr. at 64:3-6)

[7] Needless to say, the tax calculation by Plaintiff's accountant necessarily assumes that Plaintiff's back pay calculations are correct, which is not the case; they are significantly inflated.  *See, supra*, at 5-6.

any other employee.  In any event, Plaintiff has 37.5 hours (five days) of personal leave time that

he accrued in September 2017 (prior to trial), which will expire if not used by September 4,

2018.  Loshbaugh Aff. at ¶ 15.  It is appropriate for an employee to take personal leave time for

personal issues, such as attending trial, and as such, Plaintiff could have used that time, rather

than using his vacation time.  Therefore, Plaintiff is not entitled to compensation for using

vacation time to attend his trial.

## II.     PLAINTIFF'S REQUEST FOR INSTATEMENT OR, ALTERNATIVELY, AN AWARD OF GROSSLY OVERSTATED FRONT PAY SHOULD BE REJECTED

### B.  The Court Should Decline To Order DFS To Promote Plaintiff To An M5 CRMS Position Because It Would Require "Bumping" An Innocent Incumbent, Extraordinary Relief That Is Clearly Not Warranted Here

It is within a court's discretion to award front pay, reinstate the plaintiff's employment, or

do nothing at all with regard to future employment.  *Banks v. Travelers Cos*., 180 F.3d 358, 364

(2d Cir. 1999); *see also Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1368 (3d Cir.

1993); *Williams v. Roberts*, 904 F.2d 634, 639 (11th Cir.1990); *Rosario–Torres v. Hernandez–*

*Colón,* 889 F.2d 314, 321 (1st Cir. 1989).  In exercising this discretion, a court should seek to

ensure that plaintiff is "made whole" with respect to his injuries from the discrimination.  *See*

*Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 727 (2d Cir. 1984).  As recognized by the

Second Circuit in *Whittlesey*, however, ordering the employer to place the plaintiff into the

position he would have obtained but for discrimination "may not always be possible" because

"there may be no position available for plaintiff at the time of judgment."  *Id.* at 728 (citing

*Patterson v. American Tobacco Co.*, 535 F.2d 257, 268-69 (4th Cir.), *cert. denied*, 429 U.S. 920

(1976).

Plaintiff acknowledges that the M5 CRMS position he applied for is already occupied by John Cappello and there are no other available M5 positions.  Plaintiff's MOL at 5 ("there is currently no open position").  Nevertheless, Plaintiff argues that the Court should "bump" either Cappello or Olivia Bumgardner, who also holds an M5 position, to make a position available for him.  *Id*. at 5-6.  The Second Circuit has not weighed in on whether a district court may "bump" an innocent incumbent when ordering relief in a Title VII case, but even in those circuits where "bumping" is allowed, it is recognized as an "extraordinary remedy to be used sparingly and only when a careful balancing of the equities indicates that absent 'bumping,' plaintiff's relief would be unjustly inadequate."  *See, e.g., Walters v. City of Atlanta*, 803 F.2d 1135, 1149 (11th Cir. 1986); *see also Lander v. Lujan*, 888 F.2d 153, 159 (D.C. Cir. 1989) (Ginsburg, then Circuit Judge, concurring) ("bumping can be a problematic remedy in Title VII cases, to the extent that someone other than the wrongdoing employer is made to pay for the employer's violation").

Neither of the two cases cited by Plaintiff provides any support for "bumping" Cappello or Bumgardner.  In *Lander v. Hodel*, 1988 WL 122580 (D.C. Cir. Nov. 7, 1988), *aff'd sub nom.*, *Lander v. Lujan*, 888 F.2d 153 (D.C. Cir. 1989), the defendant agency demoted the plaintiff, reorganized, and then hired someone to fill the newly-created position that was the substantial equivalent to the position the plaintiff had previously held.  *Id*. at *3.  Because "bumping" would have *restored* the plaintiff to the equivalent position he held before his wrongful demotion, and because the agency was aware of the plaintiff's discrimination complaint before appointing the incumbent, the court decided to order reinstatement of the plaintiff, *albeit* "reluctantly . . . because of the effect the relief has on the incumbent."  *Id*.  None of the factors leading the court in *Hodel* to "bump" the incumbent exists here; Plaintiff was never

selected for the M5 CRMS position and DFS was not aware of Plaintiff's EEOC complaint until several months after hiring Cappello and Bumgardner.

Similarly, in *Shea v. Icelandair*, 925 F. Supp. 1014 (S.D.N.Y. 1996), the court "bumped" the incumbent in order to restore the plaintiff to the equivalent position he held prior to the defendant's corporate reorganization.  *Id.* at 1031-32.  Critically, the incumbent in *Shea* would not have lost his job as a result of being "bumped" because he could be transferred back to his prior position and would not lose any pay or benefits.  *Id.*  The circumstances here are drastically different.  As noted above, Plaintiff never held the M5 CRMS position so "bumping" would not *restore* him to a prior position.  Moreover, both Cappello and Bumgardner were new hires when appointed to their present M5 CRMS positions, so there is no position for them to be transferred back to if they are "bumped"; they will lose their jobs.  Loshbaugh Aff. at ¶ 6.

Given the facts presented here, it would be grossly unfair and inequitable to the innocent incumbents Cappello and Bumgardner to "bump" them in order to open up a slot for Plaintiff, even assuming that "bumping" is permitted in this Circuit.  *Shea*, 925 F. Supp. at 1031-32; *see also Hodel*, 1988 WL 122580 at *3.  Accordingly, the only prospective relief the Court should even consider is whether an award of front pay is necessary, which as discussed below, it is not.

### C.  Plaintiff Is Not Entitled To Front Pay Because DFS Can Make Plaintiff "Whole" By Paying Him An M5 Grade Salary Through An Open Exempt Line Position

Front pay is an equitable remedy to be awarded by the court, available at the court's discretion but not mandatory under Title VII, and distinct from the award of compensatory damages.  *See Pollard v. E.I du Pont de Nemours & Co*., 532 U.S. 843, 848 (2001); *Robinson v. Metro–North Commuter R.R. Co*., 267 F.3d 147, 160 (2d Cir. 2000).  While courts have defined front pay in several ways, it is generally understood to be an award for lost compensation during

the period between judgment and reinstatement, or in lieu of reinstatement. *Pollard,* 532 U.S. at 845; *United States v. Burke,* 504 U.S. 229, 239 n. 9 (1992) (defining front pay as an award for "future lost earnings"); *Banks,* 180 F.3d at 364 (holding that front pay may be awarded where reinstatement may not be an option due to animosity between the parties or availability of positions).

The key issue to be determined by a court in awarding front pay in lieu of instatement is whether the damages will make the plaintiff "whole." *Pollard,* 532 U.S. at 850 (2001) (finding that the award of  front pay as a substitute for the remedy of reinstatement was "a necessary part of the 'make whole' relief mandated by Congress and by this Court") (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421 (1975)).  When considering an award of front pay, "'the court must avoid granting the plaintiff a windfall'" (*Rao v. New York City Health and Hospitals Corp*., 882 F. Supp. 321, 332 (S.D.N.Y. 1995) (quoting *Standley v. Chilhowee R-IV School District*, 5 F.3d 319, 322 (8th Cir. 1993)), and "[u]nder no circumstances should [a front pay] award be 'unduly speculative'" (*Sharkey v. Lasmo (Aul Ltd.)*, 15 F. Supp. 2d 401, 404 (S.D.N.Y. 1998) (quoting *Dunlap-McCuller v. Riese Org*., 980 F.2d 153, 159 (2d Cir. 1992)).  *See also Barbano v. Madison County,* 922 F.2d 139, 146–47 (2d Cir.1990) (upholding denial of front pay because a finding that the plaintiff had already been made whole was within the district court's discretion); *Rivera v. Baccarat, Inc.*, 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999) ("under no circumstances can the [front pay] award be based on undue speculation") (citing *Sharkey*).

Here, there is no need for a front pay award because DFS can pay Plaintiff on a prospective basis the salary he would have made in the M5 CRMS position for as long as he remains an employee of DFS.  *Barbano*, 922 F.2d at 146–47.  As explained by DFS's Director of Administration and Operations, Chad Loshbaugh, in his accompanying affidavit, DFS has an

11

available "exempt line" position that can be pegged to the M5 grade level salary and into which DFS has approved placing Plaintiff.  Loshbaugh Aff. at ¶ 14.  Upon placement into this exempt line, Plaintiff will be paid the same M5 level salary he would have received if he had been promoted to the M5 CRMS position in August 2012, including any future salary increases applicable to that grade level, for as long as he remains employed by DFS.  *Id*. Upon retirement, his pension will be calculated on the basis of the M5 salary he would receive through his date of retirement, taking into account the salary credit he would receive toward his pension for any back pay award. *Id*.

Accordingly, the salary Plaintiff would receive going forward and the pension he would receive upon retirement, will be the same as the salary from 2018 forward and pension he would have received had he been promoted to the M5 CRMS position in August 2012.  As a result, the Court should not award any front pay because Plaintiff will be made whole by placement into an exempt line position at the M5 salary and, accordingly, any award of front pay, including lost pension benefits, would be a windfall.   *Pollard,* 532 U.S. at 850; *Barbano*, 922 F.2d at 146–47; *Rao*, 882 F. Supp. at 332.

### D.  Plaintiffs' Calculation Of Front Pay Is Based On Undue Speculation And Would Result In An Impermissible Windfall

Plaintiff incorrectly assumes that because "there is currently no open [M5 CRMS] position" (Plaintiff's MOL at 5), he cannot receive a salary commensurate with the M5 CRMS position unless Cappello or Bumgardner are "bumped" and he takes one of their positions.  As explained above, that is not the case.  Should the Court deem it appropriate, DFS has approved placing Plaintiff into an open position in an exempt line and paying him at the M5 salary rate until his retirement, obviating the need for any front pay award.  *See, supra*, at 11-12.  The Court should adopt this approach rather than Plaintiff's proposal for front pay, which is rife with

"undue speculation" and would provide him with an impermissible windfall.  *Rivera*, 34 F. Supp. 2d at 878; *Sharkey*, 15 F. Supp. 2d at 404.

Plaintiff's front pay calculation is based on the following erroneous and speculative assumptions: (i) his salary today would be same as Cappello's current salary had Plaintiff been promoted to the M5 CRMS position (Saber Aff. at ¶ 6); (ii) he will retire in five years at age 70 (*id*. at ¶ 13); (iii) over the next six years until his retirement the Grade 29 level salary and the M5 level salary will increase 3.4% each year based on the percentage raises allegedly approved in the past (*id.* at ¶ 12); (iv) his pension upon retirement had he been promoted to the M5 CRMS position would be based on his salary during the three years immediately preceding his retirement at age 70, which he calculates based on the assumptions noted above (*id*. at ¶ 14); and (v) he would receive his pension for 14.4 years based on  the expectation that he will live to be 84.4 years old (*id*. at ¶ 19).  These assumptions are flawed for several reasons.

*First*, for the reasons set forth above with respect to back pay, Plaintiff's assumption that his starting salary for the M5 CRMS would have been the same as Cappello's starting salary had he been promoted to the position in August of 2012 is wrong; pursuant to New York Civil Service Law, Plaintiff, a state employee who would be moving from one grade level to another, would not have been offered the same starting salary as Cappello, an external candidate with extensive management experience in the private sector.  *See, supra*, at 4-6.  Rather, Plaintiff's starting salary for the M5 CRMS position in August 2012 would have been no more than $116,108 under applicable law, and his current salary in that position applying the approved historic increases for the M5 CRMS position would be approximately $150,872.[8]  Loshbaugh Aff., Ex. B; *see, supra*, at 4-6.

---

[8] This number is calculated by multiplying the weekly salary of $2,901.40 by 52 weeks per year.  *See* Loshbaugh Aff., Ex. B.

*Second*, Plaintiff's assertion that he will retire at the end of 2023 at age 70 is pure speculation.  He gave no testimony to this effect during trial, and even if his current plan is to retire at the end of 2023, his life circumstances may change and he may decide to retire at an earlier age; doing so (a decision entirely within his control) would provide him with a windfall for each year in retirement prior to 2023 because, under Plaintiff's front pay calculation, he receives his future lost wages for each year until 2023 even though, if he retires before 2023, he would only be entitled to his lost pension benefit (a lesser amount that his lost wages) for each year in retirement prior to 2023.  Accordingly, Plaintiff's front pay calculation would provide him with a windfall for each year in retirement through 2023 should he decide to retire before 2023.  Indeed, nothing prevents Plaintiff from retiring the day after DFS satisfies this Court's final judgment, in which case Plaintiff's front pay calculation will provide him with a windfall for each year from 2018 through 2023.

*Third*, Plaintiff's projection of the difference between his Grade 29 salary and his salary at the M5 level from 2018 through 2023, which also affects his pension calculation, assumes that employees in all grade levels will receive general salary increases for the next six years consistent with the increases approved for those grade levels from 2012 through 2017.  Saber Aff. at ¶ 12.  This is wild speculation.  The increases approved annually for each grade level are purely discretionary, have varied widely from year to year and between grade levels in each year, and depend on many factors, including budgetary constraints.  Loshbaugh Aff. at ¶ 9.  For example, as Plaintiff's own figures reveal, there was *no increase* in the M5 level salary for 2015 even though there was a 6% increase in the Grade 29 level salary in that same year, and for 2014 there was a 2% increase in the M5 level salary and a 6.4% increase in the Grade 29 level salary.[9]

---

[9] Plaintiff inexplicably asserts that "the State level pay raises for all grade levels are equal."  Saber Aff. at ¶ 12.  That is obviously not the case as Plaintiff's own chart demonstrates.  *Id*. at ¶ 7 (Table).

Saber Aff. at ¶ 7.  Moreover, it is the Division of Budget, which is part of the Executive

Chamber, not DFS, that has final approval for salary increases for the M-5 level position.

Accordingly, there is no basis for Plaintiff's speculation that both the Grade 29 level salary and

the M5 level salary will increase at the rate of 3.4% for each year from 2018 through 2023.

Saber Aff. at ¶ 12.

      *Fourth*, Plaintiff's purported "Pension Loss" is infected by all of the flawed assumptions

noted above because his calculation is dependent upon his unsubstantiated and erroneous salary

projections through 2023 (including his inflated starting salary in the M5 position and the

projected 3.4% annual raises for the Grade 29 and M5 positions from 2018 through 2023) and

his speculative retirement age.  Moreover, Plaintiff's use of the life expectancy figure of 14.4

years "upon retirement at age 70" is wrong.  Saber Aff. at ¶ 19.  If done properly, Plaintiff's

calculation of his "Pension Loss" should be based on his life expectancy *now* – at the time of his

calculation – not in 2023 at age 70.  Using Plaintiff's life expectancy table, his life expectancy

now at age 65 is 18 years, or age 83 (as opposed to age 84.4 per Plaintiff's calculation).  Saber

Aff. at ¶ 19 and Exh. 8.  Additionally, Plaintiff would receive a windfall if he retires before age

70 as his front pay calculation is based on the higher salary he will be earning up until 2023

which he will not earn if he retires prior to that time.

      For all of these reasons, Plaintiff is not entitled to an award of front pay; DFS's

placement of Plaintiff into an exempt line position pegged to the M5 level salary would make

Plaintiff "whole" with respect to his future earnings and pension benefits (*Pollard*, 532 U.S. at

850; *Barbano*, 922 F.2d at 146-47), and Plaintiff's proposed front pay award should be rejected

because it is based on undue speculation and would provide plaintiff with an inappropriate

windfall (*Dunlap-McCuller*, 980 F.2d at 159; *Rao*, 882 F. Supp. at 332).

### III.    THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Plaintiff's request for injunctive relief should be denied as inappropriate and unnecessary.  Specifically, Plaintiff seeks "an injunction barring future discriminatory and retaliatory action."  Pl.'s MOL p. 9.  Such "obey the law" injunctions are highly disfavored in this Circuit.  *See, e.g., S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) ("[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law") (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)); *S.E.C. v. Tourre*, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) (expressing "skeptic[ism] of the utility of this kind of 'obey-the-law' injunction—after all, everyone is required to obey the law, the law comes with its own penalties, and merely reciting statutory provisions gives an individual 'little guidance on how to conform his conduct to the terms of the injunction.'") (citation omitted); *Matthews v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 83 Civ. 6065, 1985 WL 151, at *4 (S.D.N.Y. Mar. 19, 1985) ("Since Title VII imposes its own obligation of obedience on the defendants, this Court can see no need for such a broadly phrased injunction").  Further, such injunctive relief is wholly improper and unnecessary where, as here, there has been no finding of widespread discrimination or retaliation meriting broad-based remediation.  *See Rizzo v. Goode,* 423 U.S. 362, 373-75 (1976) (reversing grant of injunctive relief where there were individual incidents of misconduct, but no "pervasive pattern" of discrimination); *Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v. Port Auth. of N.Y. & N.J.*, 944 F. Supp. 208, 220 (S.D.N.Y. 1996) ("[t]he isolated instances of misconduct cited by Plaintiffs are insufficient to support the issuance of an injunction."); *Kirkland v. Buffalo Bd. of Ed.*, 487 F. Supp. 760, 773 (W.D.N.Y. 1979) (refusing to enjoin defendant from discriminating because there was no proof or finding of a pattern or practice of discrimination; case was based on "an isolated violation

of Title VII, § 2000e-3(a) which does not portend a recurrence."), *aff'd*, 622 F.2d 1066 (2d Cir.

1980)   Accordingly, the Court should reject Plaintiff's request for an injunction.

Plaintiff's request that the Court rescind and expunge the January 2014 performance

evaluation, the Summit IER, the 2014 mid-year recertification, and the Notice of Discipline and

Charges is similarly unwarranted and inappropriate.   The jury returned a verdict finding that

Plaintiff proved that "one or more" of "the challenged performance evaluations, the

unsatisfactory mid-year rating, the issuance of charges with a proposed 20-day suspension,

and/or the allegedly lesser work assignments" was a materially adverse employment action

against him.   ECF No. 141 at p. 2.   The jury then found that Plaintiff proved "that the material

adverse employment action would not have occurred if he had not filed a discrimination

complaint" with the EEOC.   *Id.* at p. 3.   The jury did not specify which action or actions it

deemed retaliatory, and thus it is impossible to decipher whether the jury found all of the actions

retaliatory, or whether the jury found that certain actions were non-retaliatory.   In fact, it was

Plaintiff who refused to include individualized questions on the verdict sheet so that the jury

could separately consider the allegedly retaliatory actions.   *See* Joint Proposed Verdict Sheet

(ECF No. 115) at pp. 5-9 (reflecting Plaintiff's proposal of one question concerning all purported

retaliatory actions and Defendant's proposal including six distinct questions concerning each

purported action).   Plaintiff cannot now capitalize on this ambiguity by having all records

expunged in the absence of specific findings concerning those records.

## IV.   PLAINTIFF'S REQUESTED FEES ARE UNREASONABLE AND SHOULD BE SUBSTANTIALLY REDUCED

The party seeking attorneys' fees has the burden of showing a reasonable number of

hours were spent on the case. *New York Ass'n for Retarded Children ("NYSARC") v. Carey*, 711

F.2d 1136, 1148 (2d Cir. 1983).   "If the court finds that the fee applicant's claim is excessive or

insufficiently documented, or that the time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation or unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." *Auto. Club of N.Y., Inc. v. Dykstra*, No. 04 Civ. 2576, 2010 WL 3529235, at *2 (S.D.N.Y. Aug. 24, 2010); *see also NYSARC*, 711 F.2d at 1146 (holding that percentage cuts are "a practical means of trimming fat from a fee application").

### A.  Plaintiff's Attorneys' Bills Are Excessive

Plaintiff's counsel spent an exorbitant amount of time on tasks that should have been performed far more efficiently.  For example, Plaintiff's counsel expended approximately 30 hours on the EEOC charge and related tasks.  *See, e.g.,* ECF No. 173-2, pp. 3-16.  Yet, the EEOC proceedings merely involved the filing of a charge and an amended charge; the EEOC did not hold any hearings or conferences, and therefore, Plaintiff's counsel's hours are excessive.

Plaintiff's request for approximately 128 hours for opposing DFS's summary judgment motion is also unwarranted.  *See., e.g.,* ECF No. 173-2, pp. 81-97.  As an initial matter, DFS prevailed on numerous grounds raised in its motion.  *See* Opinion and Order, ECF No. 64 (dismissing numerous claims brought by Plaintiff including discrimination based on his cubicle assignments, his counseling session, his performance evaluations, his job assignments, his designation as a "Desk Examiner," and the Notice of Discipline, as well as all of his retaliation claims based on his out-of-title grievance), and thus a reduction is warranted.[10]  Further, an

---

[10] "If . . . a plaintiff has achieved only partial or limited success, the [lodestar] may be an excessive amount . . . even where plaintiff's claims were interrelated." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 307 (S.D.N.Y. 1998) (reducing the lodestar by 10% where the plaintiff prevailed on claims for sex discrimination and retaliation but failed on claims for sexual harassment and age discrimination).  Here, where Plaintiff asserted and conducted discovery on claims that were ultimately dismissed on summary judgment (and where the jury found no liability on the religious discrimination claim after trial), the Court should reduce the award.  *See Kim v. Dial Serv. Int'l, Inc.*, No. 96 Civ. 3327, 1997 WL 458783, at *18 (S.D.N.Y. Aug. 11, 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998) (reducing fees by 15% to reflect that plaintiff prevailed on his race discrimination claim but lost on his national origin and age discrimination claims).  Most

amount of no more than 60 hours is reasonable for opposing a summary judgment motion in a straightforward discrimination and retaliation case such as this in light of Plaintiff's counsel's experience.  *See, e.g., Kauffman v. Maxim Healthcare Servs., Inc.*, No. 04 Civ. 2869, 2008 WL 4223616, at *11 (E.D.N.Y. Sept. 9, 2008) ("expending one hundred twenty (120) hours to respond to Defendant's motion for summary judgment and a similar number of hours to resolve discovery disputes is excessive, especially in light of counsel's claimed expertise."); *Chauca v. Park Mgmt. Sys., LLC*, 10 Civ. 5304, 2016 WL 8117953, at *4, n.7 (E.D.N.Y. July 18, 2016) (finding 60-71 hours reasonable for opposing a summary judgment motion on a discrimination claim).

Further, Plaintiff's counsel spent an inordinate amount of time researching, drafting, and revising the parties' pretrial submissions, including the Joint Pretrial Order (49.7 hours), voir dire (10 hours), jury instructions (32 hours), and the verdict form (6.9 hours) (98.6 hours total).  *See, e.g.,* ECF No. 173-2, pp. 106-152; 174-1, pp. 2-6.  Here, where the trial involved straightforward discrimination and retaliation claims, and given Plaintiff's counsel's experience, Plaintiff's fee request is unreasonable and should be reduced.  *See, e.g., Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133, 2014 WL 2200393, at *11 (S.D.N.Y. May 27, 2014), *adopted by* 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014) (reducing requested fees by 15% and taking issue with the fact that the partner expended "more than twenty hours drafting a pretrial order and proposed jury charges" and his supervisor spent "more than ten hours on the same task"); *Zhao Hui Chen v. Jin Holding Grp. Inc.*, No. 10 Civ. 0414, 2012 WL 279719, at *4 (S.D.N.Y. Jan. 31, 2012) (finding that time spent on jury questionnaire and verdict sheets was excessive because an attorney with such

---

critically, all of Plaintiff's claims concerning his out-of-title grievance were dismissed; those claims were not intertwined with Plaintiff's surviving claims, and formed the basis for the juror confusion tainting the verdict, and therefore, Plaintiff's counsel should not be compensated for that work.

experience and knowledge "should have these standard materials readily available, especially for a case which is so simple and direct.").

Plaintiff's counsel's time expended on motions *in limine* was also excessive.  Plaintiff billed over 76 hours in connection with the motions *in limine* in this case, including over 56 hours for opposing DFS's motions *in limine*, and 20 hours for his motions *in limine* (one of which he later withdrew (ECF No. 117)).  *See, e.g.*, ECF Nos. 173-2, pp. 102-120, 141-147; 174-1, pp. 2-7.  This amount is unwarranted and should be reduced.  *See, e.g., Norwood v. Salvatore*, No. 3:12 Civ. 1025, 2016 WL 1060299, at *8 (N.D.N.Y. Mar. 15, 2016) (finding reasonable a request for 4.4 hours opposing defendants' motions *in limine*); *Gierlinger v. Gleason*, No. 89 Civ. 0686E(F), 1999 WL 222604, at *3 (W.D.N.Y. Apr. 2, 1999) (finding that 83.1 hours on motions *in limine* was excessive and awarding fees for 40 hours spent on such motions).

Put simply, Plaintiff's total requested hours – 1366.3 – including over 285 hours for trial preparation and trial, is unwarranted.  Case law does not support such a high award for a case like this, which involved straightforward discrimination and retaliation claims.  *See, e.g., Chauca*, 2016 WL 8117953, at *6 (finding approximately 400 hours reasonable for a discrimination case through post-trial motions); *Chen v. Jin Holding Group, Inc.*, 10 Civ. 414, 2012 WL 279719, at *4 (S.D.N.Y. Jan. 31, 2012) (reducing number of hours from 451.57 to 188.8 (58%) on an FLSA case that was resolved after a three-day trial); *Creighton v. Dominican College*, No. 09 Civ. 3987, 2011 WL 4914724, at **6-7 (S.D.N.Y. Aug. 16, 2011) (awarding fees for approximately 874 hours after trial on case involving discrimination, hostile work environment, and retaliation claims); *Germain v. Suffolk County*, 672 F. Supp. 2d 319, 327 (E.D.N.Y. 2009) (finding approximately 690 hours reasonable after trial on a discrimination lawsuit); *see also Norwood v. Salvatore*, No. 3:12 Civ. 1025, 2016 WL 1060299, at *8

(N.D.N.Y. Mar. 15, 2016) (holding that 115.4 hours spent over a three-month period for trial

preparation and trial on a section 1983 claim was reasonable).

###### B. Plaintiff is Not Entitled to Fees for the Disciplinary Arbitration Hearing

Plaintiff's fee request includes approximately 81 hours in connection with work relating

to the disciplinary proceeding (approximately $35,450), yet those fees are not recoverable.

Courts will award fees for time spent on administrative proceedings only where they are

necessary prerequisites to bringing a Title VII claim, such as an EEOC proceeding.

*See Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 581 (2d Cir. 2003) (courts will award

fees for time spent on administrative proceedings to enforce the claim prior to the litigation

where the proceeding is "useful and of a type ordinarily necessary to secure the final result

obtained from the litigation."); *see also New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54

(1980).  The Notice of Discipline served on Plaintiff charging him with incompetence and

misconduct resulted in a three-day hearing, after which an independent arbitrator upheld some of

the charges.  Joint Exh. 21, ¶ 14 (noting that the arbitration specifically excluded the issues of

whether the disciplinary charges were discriminatory or retaliatory).  Those proceedings, and

Plaintiff's counsel's representation in connection with those proceedings, were not "necessary"

prerequisites to this litigation.  Indeed, Plaintiff does not cite to any case law supporting his

claim for fees in connection with the disciplinary proceeding, but merely states that his

representation during the Notice of Discipline process "necessitated considerable strategizing to

save Plaintiff's job" and "it was important that no arbitration decision be issued that might harm

Plaintiff's court case."  Traub Dec. (ECF No. 173), ¶¶ 4, 6.[11]  Plaintiff's desire to have private

representation during the disciplinary proceedings and his choice to retain counsel for those

proceedings should not be at the expense of DFS.[12]

### C.   The Number of Hours Should be Reduced Because the Billing Records Contain Improper Block Billing and Vague Entries

Plaintiff's fee application should be substantially reduced because the invoices contain

impermissible block billing and vague entries.  Block billing, the aggregation of multiple tasks

into one billing entry, makes it "exceedingly difficult for courts to assess the reasonableness of

the hours billed."  *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008).  The use of such

undifferentiated entries can merit a 20% across-the-board reduction in this time billed.  *Id.* at

451; *see also Bravia Capital v. Fink,* 296 F.R.D. 136 (S.D.N.Y. 2013) (excluding fees associated

with an invoice entry that has "vague descriptions that do not identify clearly the relationship

between the work described, and the motion").  Courts also have approved reductions of 20% to

25% for vague billing entries such as "letter to court," "staff conference," "work on motion,"

"study and review file," "telephone call with client" and "research."  *Wise*, 620 F. Supp. 2d at

452.  Time entries that do not provide any context are particularly suspect and subject to a

blanket reduction.  *Id.; see also Aguilar v. E-Z Supply Corp.*, No. 06 Civ. 6790, 2009 WL

2905545, at *7 (E.D.N.Y. Sept. 10, 2009) (reducing fee and finding entries of "draft sj brief" to

be vague).  Here, Plaintiff's counsel's billing records are replete with such vague entries, which

---

[11] Plaintiff's counsel's assertion that her involvement in the arbitration was "critical" because it "enabled [her] to obtain sworn testimony from a number of the individuals," two of whom she later chose not to depose, is unavailing. ECF No. 173, ¶ 6.  Plaintiff's counsel's choice to question certain individuals twice and her decision not to depose two individuals after the arbitration was not linked to any success obtained at trial, nor was it necessary to assert or prevail on any claim.

[12] Plaintiff was entitled to have a union lawyer represent him at the disciplinary hearing under section 33 of Article 33 of the Public Employees Federation ("PEF") collective bargaining agreement.  *See* http://www.pef.org/archive/contract_resources/2011_complete_contract/2011-2015_complete.pdf, p. 55.

are further exacerbated by block billing of multiple tasks within a single entry.  *See* Wright Dec., Exs. 1, 5.  Accordingly, the Court should deny Plaintiff's application for fees associated with these entries, or should reduce Plaintiff's requested fees by at least 20%.

### D.  Plaintiff's Counsel's Billing Records Demonstrate Duplicative Work

Plaintiff's fees must also be reduced because the time entries reflect work that was wholly duplicative or superfluous.  *See Bentley Labs. LLC v. TPR Holdings LLC*, No. 14 Civ. 6306, 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017) ("[i]f a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours.").  For example, counsel's billing records reflect far too many hours expended on the pretrial submissions and motions *in limine*.  *See* Wright Dec., Ex. 3; *see also supra* at 19-20.[13]  Notably, numerous entries reflect conference calls or meetings between counsel, but only one attorney's entry reflects that such a call or meeting ever occurred. *See* Wright Dec., Ex. 4.  Such discrepancies, combined with entries demonstrating inefficient work, warrant a substantial reduction.

---

[13] Plaintiffs' counsel also jointly spent over five hours in connection with their unsuccessful opposition to DFS's request that the parties enter into a confidentiality stipulation.  *See* ECF Nos. 173-2, pp. 134-135; 174-1, pp. 5-6.

### E.  Plaintiff's Attorneys Are Not Entitled to Fees for Non-Legal Clerical Work

Plaintiff's attorneys improperly seek fees at a higher rate for a substantial amount of work that could have been performed by paralegals or other clerical staff.[14]  This includes multiple hours spent drafting tables of contents and tables of authorities and filing documents with the court, none of which is compensable at the rates requested by Plaintiff's counsel here for their legal work.  *See* Wright Dec., Ex. 2.

Courts routinely reject such excessive and unnecessary fees.  In *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12 Civ. 7311, 2016 WL 5812105, at *9 (S.D.N.Y. Sept. 22, 2016), the court reduced the plaintiff's requested fees by 75% because, *inter alia*, the lead attorney "expended time doing administrative and editorial work" including compiling documents for depositions, checking formatting, exhibits, and deposition citations, and filing papers, which the court found "unreasonable."  *See also Portillo v. New Ko-Sushi Japanese Rest., Inc.*, No. 16 Civ. 2429, 2017 WL 3995602, at *1 (S.D.N.Y. Sept. 8, 2017) ("the ministerial task of filing submissions on ECF should have been performed by a paralegal, billing at $100, rather than a lawyer billing at a much higher rate"); *Tucker v. City of N.Y.*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (reducing the reasonable number of hours expended on a matter where "attorneys perform[ed] work that [could have been] done by a clerical person or at most a paralegal"); *Daiwa Special Asset Corp. v. Desnick*, No. 00 Civ. 3856, 2002 WL 31767817, at *4 (S.D.N.Y. Dec. 3, 2002) ("[t]he use of highly skilled and highly priced legal talent for matters easily delegable to nonprofessionals is not compensable at the attorney hourly rates reflected in the time sheets.").  Accordingly, Plaintiff should not receive more than $100/hour for these tasks.

---

[14] For the purposes of this motion, DFS does not contest the hourly rates charged by Ms. Traub ($450/hour) or Ms. McIntyre ($400/hour) in this action.

**CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that the Court deny

Plaintiff's motion for damages, injunctive relief, and attorneys' fees, or substantially reduce the

amount awarded, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
     April 11, 2018

                         ERIC T. SCHNEIDERMAN
                         Attorney General of the State of New York
                         *Attorney for Defendant New York State Department*
                         *of Financial Services*

                         By:_____/s/_____
                         ANDREW AMER
                         Special Litigation Counsel
                         ALISSA S. WRIGHT
                         Assistant Attorney General
                         120 Broadway, 24th Floor
                         New York, New York 10271
                         (212) 416-6035