USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NASSER SABER,
                         Plaintiff,

            -against-

NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES,
                         Defendant.
------------------------------------------------------------X

15 Civ. 5944 (LGS)

OPINION & ORDER

LORNA G. SCHOFIELD, District Judge:

Plaintiff moves for entry of judgment against Defendant for damages, equitable relief and for reasonable attorneys' fees and costs. For the reasons below, Plaintiff's motion is granted in part and denied in part. Familiarity with the underlying events and the trial, as described in the Opinion and Order, dated July 20, 2018 ("July 20 Opinion"), is assumed.

## I. DISCUSSION

### A. Back pay

Plaintiff is entitled to back pay of $121,231 on account of Defendant's failure to promote him to the position of Chief Risk Management Specialist ("CRMS"). This amount represents the difference between what Plaintiff received as a Grade 29 Principal Risk Management Specialist and the compensation for the CRMS position paid to John Cappello for the period July 2012 through 2017.

A Title VII claimant may recover compensatory damages in the form of back pay. 42 U.S.C. § 1981a(b)(2); *accord Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 286 (2d Cir. 2011). "Back pay is 'an amount equal to the wages the employee would have earned from the date of [violation] to the date of [judgment], along with lost fringe benefits such as vacation pay and pension benefits.'" *Noel v. N.Y. State Office of*

*Mental Health Cent.*, 697 F.3d 209, 213 (2d Cir. 2012) (citing *United States v. Burke*, 504 U.S. 229, 239 (1992), *superseded by statute on other grounds*.). "Evidence of the salaries paid to other individuals may be relevant to that calculation, but only insofar as the plaintiff lays a sufficient foundation to permit the reasonable inference that his salary would have matched or been pegged to the salaries of others. The trial court has considerable discretion to determine whether there is such a sufficient foundation." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998) (internal citation omitted); *accord Mobasher v. Bronx Community College of N.Y.*, 269 F. App'x 71, at *3 (2d Cir. Mar. 13, 2008). "An award of backpay is the rule, not the exception. The decision to award backpay is measured against the purposes which inform Title VII, which includes removing the stain discrimination leaves on equality in the workplace and making victims of discrimination whole." *Bergerson*, 652 F.3d at 286 (internal quotation marks and citation omitted).

For the reasons stated in the July 20 Opinion, the date of DFS's first decision not to select Plaintiff as a CRMS is July 3, 2012, when DFS circulated an internal memorandum reflecting the decision not to promote Plaintiff. The parties dispute whether Plaintiff's back pay should be computed based on John Cappello's salary as CRMS, resulting in back pay of $121,231; or the lower statutory promotion salary rate with annual statutory increases thereafter, resulting in back pay of $97,921. *See* N.Y. Civ. Serv. Law § 131.2(a).

Here, Plaintiff established a "sufficient foundation to permit the reasonable inference that his salary would have matched" that of John Cappello had he been hired as a CRMS. *Kirsch*, 148 F.3d at 166. Plaintiff was a civil servant with a graded salary.[1] As such, his salary increases were

---

[1] Plaintiff was initially hired as a senior risk management specialist, a civil service title with a graded salary level of 25. He was later promoted to be a principal risk management specialist

subject to New York Civil Service Law § 130.1.a.[2] "If such an employee is promoted, appointed or otherwise advanced to a position in a higher salary grade, he shall receive a percentage increase in existing basic salary of one and one-half percent plus one and one-half percent times the number of grades by which he is so advanced, or he shall be paid the hiring rate of such higher grade, whichever results in a higher annual salary." N.Y. Civ. Serv. Law § 131.2(a). However, "the director of the classification and compensation division, subject to the approval of the director of the budget, may authorize an increased hiring rate . . . , not to exceed the job rate of the salary grade of the position to which a person is to be appointed when the training or experience of such appointee substantially exceeds requirements necessary for appointment." *Id.* at § 131.1-a. In 2012, Cappello's salary ($112,326) was less than the job rate of the salary grade for a CRMS, which is an M5 position ($127, 794). *Id.* at § 131.1-d(1).

Plaintiff has shown that his "training or experience . . . substantially exceeds requirements for necessary appointment." N.Y. Civ. Serv. Law § 132.a. According to the New York State Department of Civil Service Classification standard, the minimum qualification for the CRMS position includes "Bachelor's Degree and ten years of experience in one or a combination of . . . trading, underwriting, hedging or analyzing risk management of capital markets instrument for financial institutions; audit or regulatory examination of capital markets; research or teaching experience at a college or university in finance, economics or mathematics." "A Master's Degree in [business administration] may substitute for two years of experience."

---

with a graded salary level of 29. The CRMS position was a noncompetitive position with a graded salary level of M5, which is higher than level 29.

Plaintiff has a Bachelor's of Science and Master's degrees in engineering, and a Master's of Business Administration in quantitative analysis and finance. Plaintiff was hired in September 2001, initially as a Senior Risk Management Specialist, rising through the ranks to become Principal Risk Management Specialist in October 2007. As a risk specialist, Plaintiff examined banks' trading operations and risk management to ensure compliance with laws and regulations. Plaintiff remains in the role of a Principal Risk Management Specialist.

Plaintiff also taught courses in capital markets, risk management, derivatives and options to fellow examiners and capital market specialists within DFS, as recently as March 2012. His courses received positive reviews. In addition, Plaintiff was an adjunct professor at New York University, School of Professional Studies, from 1994 to 2004, and while there, he created the risk management program. In sum, with more than 15 years of relevant work and teaching experience, and an educational level that far surpasses the minimum requirement, it is reasonable to infer that, had Plaintiff been hired as the Chief Risk Management Specialist, he would have been entitled to $121,231.

Defendant argues that Plaintiff is not entitled to the same salary as Cappello, because Plaintiff was an internal candidate, whereas Cappello was an external candidate, and that Cappello had more experience than Plaintiff. This argument mischaracterizes the record. Cappello had no experience in risk management or capital markets, as evidenced by the fact -- painful to Plaintiff -- that he was asked to train Cappello, who was "technically deficient" in his position as a CRMS. Also, Cappello was ranked fourth of seven candidates when he was initially interviewed for the CRMS position. DFS fails to explain why an external candidate with no relevant work experience would necessarily earn a greater salary than an internal candidate with extensive relevant experience and education.

### a. Tax consequences, Loss of Leave Time

Plaintiff is awarded $4,152 for increased taxes he will have to pay as a result of receiving back pay in a lump sum rather than annually had he been promoted to CRMS. He is not awarded loss of leave time he used to attend the trial in this action.

Plaintiff is awarded the incremental tax liability that he will incur as a consequence of receiving back pay as a lump sum now rather than annually had he been promoted to CRMS in 2012. He has submitted a statement from his accountant attesting that Plaintiff will pay an additional $4,152 in taxes as a result. Awarding Plaintiff this amount is necessary to restore him to the position he would have achieved absent discrimination. *See, e.g., Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 96 Civ. 8414, 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016) ("a tax gross-up is appropriate when necessary to make a claimant whole"); *Castelluccio v. Int'l Bus. Machines Corp.*, No. 3:09 Civ. 1145, 2014 WL 3696371, at *1 (D. Conn. Jul. 23, 2014) (awarding compensation for increased tax liability); *see also Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441–42 (3d Cir. 2009); *E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015); *E.E.O.C. v. Beverage Distrib. Co., L.L.C.*, 780 F.3d 1018, 1023 (10th Cir. 2015).

Plaintiff's request for leave time that he used to attend the trial is denied. He was entitled to use his leave time as he saw fit, and he chose to use it on this litigation. His use of leave time is not a direct consequence of Defendant's discrimination, rather of the litigation and Plaintiff's decision to respond to Defendant's discrimination by going to trial. "There is no evidence that requiring a worker to take vacation days for trial is inconsistent with company policy. There is, therefore, no reason to view the vacation days as a 'cost' of litigation, nor is there a reasonable

basis for awarding these days to the plaintiff." *Reiter v. Met. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2003 WL 22271223, at *15 (S.D.N.Y. Sept. 30, 2003).

### b. Pre-judgment and Post-judgment Interest

Plaintiff is awarded pre-judgment interest and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. Plaintiff requests this rate, and Defendant does not oppose it.

Post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

As for pre-judgment interest, "it is well settled that it is within this Court's discretion to award prejudgment interest on plaintiff's back pay damage." *Vernon v. Port Auth. Of New York & New Jersey*, 220 F. Supp. 2d 223, 235 (S.D.N.Y. 2002) (citing *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995)). "Title VII authorizes a district court to grant pre-judgment interest on a back pay award . . . to prevent an employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages." *Saulpaugh v. Monroe Com. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (internal citations omitted); *accord Nanjin v. Dollar Mountain, Inc.*, No. 14 Civ. 5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015). "[I]t is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award." *Saulpaugh*, 4 F.3d at 145.

"No federal statute specifies the rate at which pre-judgment interest should be calculated, and courts in this district have utilized a number of different rates. Most commonly, courts have borrowed the statutory post-judgment interest rate specified in 28 U.S.C. § 1961(a) in order to calculate prejudgment interest," *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08 Civ. 1229, 2010 WL 1930237, at *11 (E.D.N.Y. May 11, 2010) (internal citations omitted). Plaintiff requests that this rate be used for both pre- and post-judgment interest calculations, and Defendant does not object.

### B. Reinstatement

Plaintiff requests a "reinstatement" to the CRMS position, but this is a misnomer as Plaintiff never held that position. Regardless of terminology, Plaintiff's request that he be assigned the position of CRMS is denied.

If a defendant employer has engaged in intentional employment discrimination, "the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . ." 42 U.S.C. § 2000e-5(g)(1) (2006); *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 365 (2011). Although reinstatement is most commonly employed to remedy unlawful discharge, courts sometimes grant "reinstatement" in other circumstances, including when the plaintiff was denied a promotion. *See Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 591 (S.D.N.Y. 2017) (collecting cases).

Reinstatement is inappropriate here when there is an animosity between an employer and an employee. *Bergerson*, 652 F.3d at 287. The evidence in the record suggested animosity between Plaintiff and Logan, who supervises the CRMSs and who accused Plaintiff of insubordination. Plaintiff himself complained of feeling isolated at work after filing his EEOC

7

complaint, complaining that his colleagues stopped talking when he entered the room. A CRMS position is therefore particularly inappropriate as it is a management position. Regardless of Plaintiff's sincere desire to fill a CRMS role, he likely would be "ostracized and excluded" in the aftermath of the lawsuit, making reinstatement inappropriate. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984) (citation omitted).[3]

### C. Front Pay and Pension Loss

As an alternative to reinstatement, Plaintiff seeks an award of front pay, for the years 2018 to 2023, the year in which he turns 70 years old and plans to retire from his current duties at DFS. Plaintiff requests $185,926, which represents the difference between his current salary and the salary he would have earned as CRMS (as discussed above regarding back pay), discounted to present value. Defendant opposes front pay and instead proposes that Plaintiff be placed in an M5 level "non-statutory exempt line" position, while continuing to perform his current job duties. Defendant's proposal is rejected, and Plaintiff is awarded front pay of $185,926, and a pension loss of $168,167.

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint . . . the court may order such affirmative action as may be appropriate, which may include, but is not limited to, . . . any other equitable relief as the court deems appropriate," including front pay. 42 U.S.C. § 2000e-5(g)(1) (2006); *accord Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 853–54 (2001). "The purpose of front pay is to make victims of discrimination whole in cases where the

---

[3] All three CRMS positions are filled, according to Plaintiff. Although Capello is reportedly out on medical leave, the Court has not been informed that he will not return to his CRMS position or that he no longer occupies it. Reinstatement therefore would require bumping him or another incumbent, which is another reason to deny Plaintiff such relief.

factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Bergerson*, 652 F.3d at 286 (internal quotation marks and citation omitted). "An award of front pay is an alternative to reinstatement where reinstatement is inappropriate, . . . An award of front pay is discretionary." *Id.* at 287-88 (internal quotation marks and citations omitted). A front pay award reflects the difference between what the plaintiff would have earned absent the defendant's discriminatory act, and what the plaintiff currently earns if the plaintiff works until retirement, reduced to present value. *Luca v. Cty. of Nassau*, 344 F. App'x 637, 641 (2d Cir. 2009) (summary order).

"In deciding whether an award of front pay is appropriate, a court should consider (1) whether 'reinstatement [is] either impossible or impracticable'; (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve 'undue speculation.'" *Chisolm v. Liberty Lines Transit, Inc.*, No. 08 Civ. 7894, 2013 WL 452408, at *6 (S.D.N.Y. Feb. 6, 2013) (citing *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992), *cert. denied*, 510 U.S. 908 (1993)). Employment positions are "comparable" where they are similar in promotional opportunities, compensation, job responsibilities, working conditions and status. *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1061 (W.D.N.Y. 1997); *see Palma v. Pharmedica Commc'ns, Inc.*, No. 03 Civ. 1128, 2003 WL 22750600, at *4 (D.Conn. Sept. 30, 2003). "[F]ront pay awards always involve some degree of speculation," and this feature alone does not bar the award. *See Chisolm*, 2013 WL 452408, at *7 (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1992), *cert. denied*, 506 U.S. 826 (1992)).

For reasons already stated, reinstatement is inappropriate. At age 65, Plaintiff is unlikely to obtain a position with another employer for the next five years with a comparable level of

9

responsibility and compensation; a new employer is unlikely to hire and train Plaintiff for a position comparable to CRMS, given how close Plaintiff is to retirement. The position that DFS is offering Plaintiff also is not comparable to the CRMS position, as Plaintiff's duties, level of responsibility, status, and working conditions would remain unchanged, albeit with an increased salary.

An award of front pay for a 5-year period is not unduly speculative. Plaintiff has worked at DFS or its predecessor since 2001. He rose through the ranks and has remained at DFS since then. Plaintiff states that he intends to retire at age 70, in five years, in order to maximize his social security annuity and his New York State pension. *See, e.g.*, *Chisholm v. Memorial Sloan–Kettering Cancer Center*, 824 F.Supp.2d 573, 577 (S.D.N.Y. 2011) (award of front pay for two years found to be warranted); *Hill v. Airborne Freight Corp.*, No. 97 Civ. 7098, 2003 WL 366641, at *5 (E.D.N.Y. Feb. 20, 2003) (awarding front pay for approximately one year and collecting cases); *Padilla v. Metro-North Commuter R.R.*, 92 F.3d, 117, 126 (2d Cir. 1996) (awarding front pay for over 20 years); *Bethlehem Steel Corp.*, 958 F.2d at 1189 (2d Cir. 1992) (awarding front pay for a 17-year period).

Defendant disputes how the front pay is calculated, arguing that the yearly salary increase at the M5 level is discretionary and depends on budgetary concerns. Plaintiff's calculation assumes that the salary for the CRMS position and for his current positions will both increase at the rate of 3.4% per year, which is the average percentage of year over year increase for the two positions from 2014 to 2018. Defendant's argument is rejected because Plaintiff's calculation is reasonable. Cappello consistently received a salary increase of 3 to 5% per year, and an average increase of 3.88% per year between 2013 and 2018. Plaintiff's front pay award calculation is based on a conservative projection of a 3.4% percent increase per year. *See, e.g.*, *Bethlehem Steel*

*Corp.*, 958 F.2d at 1189 (upholding front pay award with 17 years of projected annual 8.3% salary increases based on historical rates and the plaintiff's abilities).

Plaintiff also seeks lost pension in addition to front pay. "If [plaintiff] [is] denied compensation for lost pension benefits, he [has not been] made whole, and thus [has] not receive[d] the proper measure of relief under the anti-discrimination laws." *Vernon*, 220 F. Supp. 2d at 237 (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375 (2d Cir. 2000)). Plaintiff's request for lost pension is granted. *See, e.g.*, *Luca v. Cty. of Nassau*, 344 F. App'x 637, 641 (2d Cir. 2009) (summary order) (affirming the district court's award of front pay and lost pension to the plaintiff). Plaintiff is awarded lost pension of $168,167.

### D. Injunction

Plaintiff's request for injunctive relief in the form of rescission of his negative reviews and notice of discipline is granted. "Generally, '[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.'" *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 99 (2d Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). "In seeking an injunction, 'the moving party must satisfy the court that the relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation . . . .'" *Id.* at 100 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Here, where the Plaintiff is expected to continue working for Defendant for a period of five years, injunctive relief is necessary.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for entry of judgment against Defendant for damages and equitable relief is GRANTED in part. Plaintiff is awarded back pay of $121,231, including pre- and post-judgment interest pursuant to 28 U.S.C. § 1961(a). Plaintiff is also

awarded payment of additional taxes of $4,152, discounted front pay of $185,926 and discounted pension loss of $168,167, with post-judgment interest pursuant to 28 U.S.C. § 1961(a). Plaintiff is also awarded $13,092.19 in costs with post-judgment interest pursuant to 28 U.S.C. § 1961(a). Plaintiff's damages for emotional distress are as discussed in the July 20 Opinion. Plaintiff's request for injunctive relief in the form of rescission of his negative reviews and notice of discipline is GRANTED.

Plaintiff's application for costs and attorneys' fees is DENIED without prejudice to renewal after the conclusion of any appellate practice. Plaintiff's requests for relief are otherwise DENIED.

The Clerk of the Court is directed to close the motion at Dkt. No. 170.

SO ORDERED.

Dated: July 27, 2018
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE